Who's going to speak with five minutes? Say again? Good morning, Your Honor. The five minutes that we've ceded will be addressed by Mr. Ed Donohue on behalf of PCIA. Welcome. All right. Please proceed. Okay. Good morning, Your Honor. My name is Daniel Pasucci. Also appearing with me on behalf of the appellant is Nathan Hamler. I'd like to begin today with a brief tale of two cities to illustrate the important policies that necessitate applying the Civil Rights Act to Section 253 of the Telecommunications Act. One city I'll refer to as the city of denial. Pardon me. Let's get things straight. You're representing Sprint Telephone. That's correct. The appellant. The appellant. All right. Now we're And also, while we're on housekeeping matters, I'd like to reserve one minute for rebuttal as well. You may want to reserve more. Well, I'll take the court's It's a pretty complicated case. I'll take the court's advice and Well, that's why I'm only suggesting that it's kind of a complex case and I think it's not an easy case. It is complicated, and certainly if the court were to indulge So you may want to reserve five minutes. I mean, you've got 20 minutes. Well, I have 15 after ceding time to amicus. If the court will give me the 20, I'd be glad to reserve five for rebuttal. Okay. Now, you are appealing only the portion of the ruling which denies your client a private right of action for damages under Section 1983. That's correct. That's the only issue that we You're not appealing what you want. We don't appeal what we win. All right. Fine. Well, if I were you, and I'm not making any decision, I think the most important case is defending what you got, not getting more, but you can do whatever you want. Well, I think both are important, and I believe the court was correct in granting the injunction and incorrect in denying the civil rights remedy, and I'd like to address both of them. I think actually the civil rights issue is perhaps the more sweeping issue because, as I'll discuss, without the civil rights remedy, Section 253 cannot accomplish what it was designed to accomplish. And I think the two-city example really illustrates the point. The first city, which I referred to a moment ago as the city of denial, enacts a perfectly lawful communications ordinance but unlawfully denies an application for a wireless facility. The other city, which for ease of use I'll refer to as the city of prohibition, adopts a blatantly unlawful ordinance that has the effect of prohibiting wireless facilities. In the city of denial, the carrier challenges the denial decision under Section 332. In the city of prohibition, the carrier challenges the ordinance under 253. The 332 case is expedited by statute. The court finds the denial unlawful and, backed by consensus case law, issues a writ that compels the city to issue the permits. Now, but Sheriff, when you're in 1983, you're asserting that you're deprived of some constitutional right. We see most of these as civil rights like right of free speech and so forth. I don't see where you've got any civil right there. You had a controversy as to whether the ordinance is applied and didn't. You don't have any case law that supports you absolutely in your position. The question of injunction or not is a pretty close question. And here you want damages and attorney's fees. And what case are you relying on that says you've been deprived of a constitutional right? Well, several, Your Honor. The Supreme Court described the triggering mechanism for the Civil Rights Act in Blessing v. Freestone and made it clear in Blessing that you don't need a constitutional right. You only need a federal right, which can be conferred by statute or constitution. And when it's conferred by statute, there's a three-test analysis to determine whether that statute triggers the Civil Rights Act. None of those three factors are disputed in this case. Instead, the county asserts a statutory construction argument, which I'll address. And the statutory construction supports the fact that Congress intended that Section 253 not supplant the Civil Rights Act. In addition, the Supreme Court's review of the ---- I think the statutory construction argument is very simple. Point out the portion of 253 which states any person aggrieved by a violation of these rights is entitled to bring a private claim in district court. Well, this statute does not expressly state that. And it doesn't even impliantly state it. It's not like those statutes which grant benefits, for instance, overtime statutes, which grant benefits to people time and a half if you work overtime. Then you have a private right of action because the courts have held that there's an implication that you have to vindicate that right by a private cause of action. But here you have a situation where the Federal Trade Commission ---- pardon me, the Federal Communications Commission does have a right to bring an action. The commission shall preempt the enforcement of such a statute. Now, isn't this a case where Congress has spoken and spoken only in the way of vesting any right of action in district court, rather than in Washington, but in district court in the commission? Respectfully, I would disagree with that, Your Honor, for several reasons. First of all, Section 253 does have rights creating language and does create a private right of action. I'll point that out, too. I will point that out. And I'll ---- the actual language of the statute specifically defines a class of beneficiaries. And, in fact, the best ---- I think the best summary of it was issued by Tenth Circuit Judge Hartz in his dissenting opinion in Quest v. Santa Fe. And there he recognized, and I quote, that Section 253 unambiguously confers a right on every entity providing telecommunication services. He went on to write, this is not a statute such as the one addressed in Gonzaga University v. Doe, the lead case cited by the Respondent, that simply states that an enterprise will not qualify for Federal funds if it engages in specific conduct that may injure third parties. The benefited parties, telecommunication service providers, are not merely incidental beneficiaries. They receive unconditional protection against injurious state or local government action. I think we could also draw an analogy in Gonzaga v. Doe. The Supreme Court recognized that it's well settled that Title VI confers a private right of action. And the type of ---- under a statute. Isn't that right? Not necessarily, Your Honor. Well, am I right in part? I can't see how you can broad jump that into a constitutional violation. Here you've got a corporation. What constitutional violation is there? We don't need to. We don't assert and we don't need to assert a constitutional violation. The Court has made it clear, the Supreme Court in Blessing v. Freestone, that a statutory violation, where that statute meets the Federal right analysis set forth in that opinion, triggers the Civil Rights Act and triggers the Civil Rights Remedies. And that unless it's supplanted by a comprehensive remedial scheme, for example, unless it's supplanted, the implication, the rebuttable presumption, is that the Civil Rights Remedies apply unless they're taken away. Where are the rights conferred on telecommunications companies under Section 253? Well, it's ---- Because I read here that there are rights conferred to protect the public safety and welfare, assure the continued quality and safeguard the rights of consumers. You're not claiming you're a consumer. No. Actually, we don't claim to be a consumer. Here, is there a benefit created by this statute for your clients? Section 253, subsection A, which specifically confers the right that Judge Hartz wrote about that unconditionally protects telecommunications providers, any entity providing telecommunications service from injurious State or local governmental action. In addition, the lower court in this case, the first lower court, we had a transition of judges, recognized also that while the intent of the statute, the overall purposes of the Telecommunications Act are to protect telecommunications subscribers, that the carriers effectively stand as a proxy for their rights and assert the advancement of the system. I see your point. Do you have any authority a little bit more authoritative than a dissenting opinion in the Tenth Circuit? Yes, we do. And first, let me be clear that this is an issue of first impression. In this circuit, as well as other circuits, there is no one who has definitively decided whether Section 1983 applies to the Civil Rights Act at the circuit level. There have been issues where there are closely related issues in other circuits, but this Court certainly has not decided anything related to it. But the other authority What about the Tenth Circuit hasn't decided? The Tenth Circuit decided the right of action issue. And that's correct. And the dissenting opinion, we obviously agree with the dissenting opinion, and I think the dissenting opinion is very well reasoned out. But to answer Judge Bea's question earlier, the other authority I would cite is right in Gonzaga v. Doe, where the U.S. Supreme Court recognized that Title VI does confer private right of action, and the language of Title VI is remarkably similar to the language here. It does not have any express clause like the Court asked for a few moments ago, expressly creating a right, expressly conferring 1983 benefits. It's not constitutional. Title VI of the Civil Rights Act of 1964? Title VI, 42 U.S.C. 2000d, which I believe, but I can't confirm, was enacted under the Civil Rights Act. But the Supreme Court there recognized that language, and that language just says no person in the United States shall be subjected to discrimination under any program or activity receiving federal financial assistance. The difference between that and 253 is active voice versus passive. Title VI is object, no person, verb, shall be subjected, subject, program or activity. Section 253 just flips the order. It's subject, State or local statute of regulation, verb, prohibit or have the effect of prohibiting, and then object, any telecommunications entity. Kennedy. As far as statutory construction, I think that's a stretch. So let's go on to the other points. Verrilli, Jr. Well, I think the Respondent's position, if we took it to its logical extreme on that point, would be that the passive voice triggers the Civil Rights Act and the active voice does not. I don't think that was the intent of the Civil Rights Act. Under Blessing v. Freestone analysis as well, we also can draw from the Court's, the Supreme Court's reversal of this Court's decision in Abrams v. Rancho Palos Verdes. In that decision, this Court adopted a framework. It took a statute, not a constitutional provision, in fact, one closely related to this case, Section 332 of the Telecommunications Act, and found that the Civil Rights Act does apply. The Supreme Court affirmed every piece of the Court's analysis, every piece of the framework except one issue. The Supreme Court disagreed with this Court and found that Section 332 contains a comprehensive remedial scheme. And on that basis alone, the Supreme Court reversed the decision. Now, if you apply that same analysis to Section 253, you must reach the opposite conclusion because Section 253 not only omits a comprehensive remedial scheme, it omits any remedial scheme whatsoever. The … But that's not quite so. I mean, the Commission has given right to preempt enforcement of such statute. That's correct. Isn't that a remedial scheme? Not according to the U.S. Supreme Court for 1983 analysis. In Wright v. Roanoke Redevelopment and Housing Authority, the Supreme Court allowed a 1983 claim despite the statute's inclusion of an administrative remedy. The Court noted there that the other cases which had denied 1983 protection because of a remedy, C. Clammers and Smith v. Robinson, in those cases the Court wrote, quote, "... the statutes at issue themselves provided for private judicial remedies, thereby evidencing congressional attempt to supplant Section 1983. When there is a judicial remedy, which the Court found there to be in Section 332, 1983 is displaced." But you have a judicial remedy. You can seek to enjoin the application of the WTO, the ordinance. That is injunctive relief. What you're asking for is damage, money relief. That's correct. I mean, nobody is disputing that you have standing and you have the right to seek relief to enjoin the ordinance, therefore preventing the prohibition of an entity to provide interstate or intrastate telecommunications services. So those are two different issues, aren't they? Well, we don't dispute any of that. But the Court, the Supreme Court in Wright v. Roanoke, wasn't talking about implied rights or what the effect of the statute was. It was going for congressional intent, and in trying to distill the congressional intent, the Court described express provision of a judicial remedy. When a statute expressly provides a judicial remedy, the Court finds that it supplants 1983. When a statute, like the one in Wright, expressly provides an administrative remedy only, like Section 253, it does not supplant Section 1983. And in that case, the Supreme Court had no problem applying 1983 remedies as a means of enforcing a right that was conferred in a different statute. And that's absolutely critical to do that here because of the situation that otherwise results. In a Section 253 case, when the Court finds that the carrier's right and the ordinance is unlawful, the Court is required to issue a narrowly tailored injunction, nothing more. The Court can't tell the county or any city to adopt a certain model ordinance. It's a narrowly tailored injunction. So as a result, Section 253 only enables the equitable remedy of enjoining each violation of Section 253 as it is either threatened or enacted. It can't go further. If the Court did, it would be reversible. Your time is up. If you want to give five minutes to your co-counsel. We'll give you an opportunity to give two minutes of rebuttal. Okay. Well, thank you very much, Your Honor. Mr. Donohue, who do you represent? Your Honor, my name is Edward L. Donohue, and I represent T-Mobile USA and PCIA, which is a trade association based in Alexandria, Virginia. What does PCIA stand for? Personal Communications Industry Association. There are two wireless trade PCIA. Come again. Personal Communications Industry Association. Okay. There are two major trade associations. Are you going to argue the 1983 claim? No, I'm not, Your Honor. I hope not. No, sir. In fact, our brief is very deliberate and lays out, I think, carefully what we think is the critical issue here. At the outset, let me mention that the trade association I'm representing, including T-Mobile as a member, own and operate approximately 50,000 telecommunications towers and antenna structures throughout the United States. And on behalf of amicus, T-Mobile and PCIA urge the court to uphold the decision of the district court in striking down the WTO or the Wireless Telecommunications Ordinance in San Diego. What I want to ask is very simple. The district court describes its concerns as follows. The information submission were burdensome. The colocation requirement is unreasonable. The use permit requirement for unfair discretion is wrong because the county could determine anything in one or two public hearings. It makes it an impossibility. And then for violation, they could have penalties. But there's a whole raft of local ordinances other than those. Is it the position of the industry or, in this case, that Sprint doesn't have to comply with the other ordinances dealing with putting up transmitter poles and so forth or non-transmitter poles? No, Your Honor. Sprint, T-Mobile and all of the wireless carriers do comply. All of the wireless carriers do need to comply with zoning ordinance where those are properly enacted. I believe there's really two critical issues for consideration. One, the lack of discretion, which the lower court said was the unfettered discretion in the county of San Diego. And, two, the fact that this ordinance does not apply to other utilities similarly situated in the rights-of-way, such as electrical and other communications providers. This is specifically a wireless ordinance. And by leaving out the other utilities in the briefs, there's quite a bit of detail about the presence of those utilities in the rights-of-way, none of which is subject to the conditional use permit or the other aspects of the WTO. Well, then you would concede that at least a reading of the district court injunction may be too broad. It seemed to me that the district court injunction could be read as to outlaw all of the local ordinances applying to wireless transmission. What we briefed and what we believe is the importance of the separateness, the standing alone of 253, the right of carriers and trade associations to bring a challenge under 253, notwithstanding the presence of Section 332. And that's an important distinction. Section 332 deals with decisions, an application that's been filed, heard, and decided. You're going at facial. That's correct, Your Honor. And that's the critical point. What is violative of any portion of the Telecommunications Act if the city regulates different utilities, telephone, whatever other utilities there are, in their right-of-ways in a different manner than they regulate wireless communications off their right-of-ways? Is that what you're arguing? You do have the non-discrimination provisions in Section 332 that says that if the carriers are functionally equivalent, you cannot discriminate or unreasonably discriminate among the providers. All right. Under 253, it's much more broad. It says it cannot be a prohibition. And that's why we go back to Auburn and Berkeley, where this Court was very clear about the broad reach of 253. But, of course, Auburn is distinguishable, and there's a bar because it was a franchise. But none of this is actually a bar to the wireless transmission. You know, when you look at that case, it really seems to be go out quite a way, and you want us to go a little bit farther. What I would say, what T-Mobile and what PCI would say, is that we need to be able to bring the 253 challenge when the scheme is so pervasive as to be prohibitory. Okay. Be it a franchise, be it a zoning ordinance, be it a right-of-way management device. The question is whether the effect has or may have prohibitory. And I think we briefed that carefully, Your Honor. I recognize that Auburn is a little different. It's a landline application, and it's a franchise. And the county makes a good deal over the fact that Auburn and Berkeley were different type providers. 253 doesn't distinguish among the type of provider, wireless or otherwise. And that's an important point. Thank you. Your time is up, sir. Thank you. Thank you, Your Honor. Okay. Mr. Buntin. Good morning. May it please the Court. Thomas Buntin, Senior Deputy County Counsel on behalf of the County of San Diego. Section 253A of the Telecommunications Act does not apply to the county's ordinance at all. 253 is directed at barriers to entry. A barrier to entry would be a situation if the county decided to have preferred providers and to do a franchise in order to select those providers. Mr. Buntin, don't we owe deference to the district court's finding of the facts here, that the way that your ordinance operates is a catch-22? It may not be a formal barrier saying Sprint can't come in here. You can allow Sprint to make an application, but the amount of hearings, the amount of hoops through which they must jump, and the amount of unfettered discretion left to your director is found by the district court as a matter of fact to effect a prohibition under the statute. Are we not bound by that fact-finding unless and until we can find an abuse of discretion by the trial judge? No, Judge Beyer, you're not. This was a ruling on summary judgment. There can't be any fact-finding that is done. Well, he can make a finding that there is no triable issue of material effect, but that your ordinance works to prohibit Sprint from providing services. This, again, would be a de novo review. It's a legal application as well as a ruling on summary judgment. We would de novo the issue as to whether there is a material fact, right? That's correct. All right. What is the material fact which shows that the effect of your ordinance is not a prohibition of Sprint providing services? I think the first thing is that with respect to Section 253 and all of the court's cases, it said that the prohibition under those kind of cases are franchise regulations that would require an up or down decision. Yes, you may participate in the local market. No, you may not. That's not an issue of material fact in this case. That was in the Auburn case. That's a question of law. Is there any triable issue of fact in this case as to whether the effect of your ordinance was indeed to prohibit the provision of services? Well, there's no dispute as to what the ordinance required, as to whether it's a prohibition of service. The county granted six of the ten applications that were before it from Sprint, so certainly there's examples that the ordinance has not had a prohibitory effect. But, again, the principal argument here is that 253 doesn't even apply to these kind of ordinances. In the city of Auburn, the court applied it to a franchise. In Berkeley, it was a franchise regulation. This is not a franchise regulation. A franchise is a barrier to entry where it's up or down. If you get permission, then you can participate in the market. If you don't get permission, you can't participate at all. The county's ordinance has no impact on Sprint's participation in the market. Before the ordinance was enacted, Sprint had dozens if not hundreds of facilities within the county. Those facilities remain, and there's nothing that's happening with respect to the county's ordinance that will prevent Sprint from participating in the market. Mr. Bunn, I understand that argument you're making, but I think as Judge Bay tried to indicate, I don't think it's going to fly too well with this panel. I think you might try, I'm not going to make an argument for you, but try arguing along these lines. One, I agree with you that summary judgment, so it's a de novo review here, all right? We look at it fresh. But the question is, is the district court's interpretation of the WTO, in other words, that it has the effect of the barrier of entry, is that interpretation of the WTO erroneous as a matter of law? If it is erroneous, why is it erroneous? Well, I think it is erroneous as a matter of law, Your Honor. Congress was clear in Acting 332 that local governments have the ability to regulate based upon aesthetics, for example. The case law is crystal clear on that. The congressional record is crystal clear on that. And, of course, Congress understood that decisions aren't made in a vacuum, that they're made pursuant to zoning ordinance. You just don't go up and make a decision. You have criteria in your ordinance, and then you apply that criteria. Well, aesthetics is extremely discretionary. As I said in the brief, beauty is in the eye of the beholder. Some people may love a Jackson Pollock painting, others may hate it. So Congress clearly intended for wide discretion to be in the hands of local government. 332C7 is entitled Preservation of Local Zoning Authority. Again, they intended to preserve the authority of local governments. There's a specific provision in the legislative history saying that Congress intended you to apply your generally applicable zoning ordinance provisions, and that's what's being applied here is the county's zoning ordinance provisions. There's also a provision in 332, as Amica's counsel admitted, providing that in order to state a discrimination claim, it has to be among functionally equivalent services, and the courts interpreting that have held that landline facilities and wireless are not functionally equivalent. So what you have here is an attempt to escape the specific protections provided by 332 by asserting a claim under 253A. And while there may be need for heightened scrutiny in the 253A franchise context when you've got an up or down decision where it's participation or no participation, there's no need for that with respect to decisions on individual wireless applications. If a decision is made under the ordinance and an application is denied, all it means is they can't install that one facility that they proposed. Perhaps they can camouflage it, submit the same application, and it will be granted. Or perhaps they can decide that it would be in a different location that would allow them to serve, and that under those circumstances they would be able to submit the same application again and they would be able to do so. And so there's no prohibition of services at all with respect to this. And again, the district courts seem to be operating on the premise that the county was going to misapply its ordinance in a way that was burdensome or onerous. The information requirement is to give the director, and the district court was concerned that there was no limitation on the specific kinds of additional information that the county could require. But there were. It had to relate to the project. It wasn't related to the fitness of the company to do business, and that in the City of Auburn was what the court was concerned about. You couldn't possibly put in all the possible information that would be required up in advance because there are going to be different considerations. The district court was concerned about unfettered discretion, but the ordinance specifically lays out the factors that are to be considered by the county. In City of Auburn, the court said it was based upon unnamed factors. Well, there are no unnamed factors here in the county's ordinances. Well, we have a situation in the City of Auburn which allows this sort of action. And so it may well be that factually, since it's zoning ordinances, it's different and the City of Auburn doesn't apply. But we have a case that allows us to possibly have a right under that particular case. And my question to you is assuming, and you don't have to give anything away, I want to know two things. One is, are there some, if we find that some of these provisions of the ordinance violate the provisions of the Wireless Transportation Act, that doesn't mean that the entire zoning ordinances are otherwise out. Sprint would have to comply with that under the worst scenario. Isn't that so? Well, I think what the district court here has found that the ordinance couldn't be severed and so that he prevented the county from applying its ordinance at all. That's what I'm wondering about. So it may well be that that's too broad a determination, that the ordinances can be severed. It very well may be that that was too broad of a determination here under the circumstances. But, again, we think no provision of the county's ordinance violates federal law. What do you say on severance? Suppose we find one, two, or three of these apply. Would you feel that we should reverse the district court as far as the other provisions, which were not mentioned? That the ordinance is, in fact, severable as applies to an option like Sprint? I think it's possible that the provisions, if the court were to find any of them that were violative, could be severed here under the circumstances. But that's not an issue before us, unfortunately. This is either up or down. You haven't argued severance. We haven't argued severance. It wasn't an issue that was brought up below. And it's certainly, you know, possible that the county could amend its ordinance to deal with any problems that the court may find. It's very difficult to sever a provision which gives unfettered discretion to the director and say that that is improper under the Act and apply the rest of them, because then you don't have any discretion. Well, again, we take issue that there's unfettered discretion here. And it's one of the key points here is that in Metro PCS. On page 5 of the opinion, it says, For such period of time as the Planning Commission and the Board of Supervisors or the director shall deem to be reasonable and necessary or advisable under the circumstances so that the objectives of the zoning ordinance shall be achieved. That sounds to me as whatever you want, Harry. Well, the zoning ordinance is specifically designed for purposes of aesthetics and compatibility, and in Metro PCS, this Court examined the city and county of San Francisco, a decision made pursuant to a city and county of San Francisco ordinance that allowed them to deny a use permit if it was unnecessary. If this Court is to find that the county's ordinance goes too far, that there's too much discretion, there was no need for Metro PCS to consider even the denial of the permit application because the zoning ordinance itself would have been a violation of the Telecommunications Act because a necessary standard is much broader than any standard that exists in the county's ordinance. So effectively, that decision is going to be overruled. If this Court were to find that the county's ordinance gives too much discretion, there are dozens if not hundreds of cases decided under 332 of the Telecommunications Act that have examined decisions made based upon conditional use permit ordinances that give as much if not more discretion than the county's ordinance. If the Court finds that the county has gone too far, all those cases have been overruled effectively. And 332 specifically sought to preserve local zoning authority and said you can deny applications based upon very discretionary determinations like aesthetics. Let me ask a question. Assuming that 332 applies, just review for me because it's very complex. What remedies would Sprint have if their application were denied on one of these bases that the district court, for example, thought was bad? What's their remedy? Do they have to go to the FCC or do they appeal it immediately to the district court? I think there's an ability, as this Court has said, to bring a supremacy claim under the Constitutional Supremacy Clause and to seek conjunctive relief. But Congress was very specific. Isn't there anything in 332 that gives them any sort of relief? Well, if there's a denial of a permit application, they can bring an action in federal district court challenging it, and that's what the metro PCS talked about. And it set up a pretty high burden, Judge Bright, for someone challenging those applications. So that's why what this is is an attempt to escape what Congress specifically sought to preserve by bringing a claim under 253A. And this is the First Circuit case in which any plaintiff has brought a 253A claim based upon a wireless siting ordinance that just governs individual wireless siting decisions. And it's an attempt to escape 332's preservation of local zoning authority. One other question. What's the FCC? Will you explain that provision to me a bit? Does the FCC have any jurisdiction at all over any ordinance that the city may have? Well, and that's another interesting point, Your Honor, that in 332 and its legislative history,  decisions for wireless providers in 332, it's there under 253. As we say in our brief, that's another indication that Congress did not intend that these individual wireless siting ordinances be reviewed, because Congress specifically took that away from the FCC. But it exists on 253. It's significant that this statute was passed in 1996, a decade ago. There are dozens, there are hundreds of cases under 332 that have challenged decisions made pursuant to ordinances to regulate wireless providers. There are decisions where challenges have been made facially to ordinances on the basis of a prohibition under 332. They have been able to cite only four cases involving 253 and ordinances that govern wireless. And in most of them, that wasn't even the issue. They cite DICTA and Cox Communication, which was actually a 332 case. They cite City of Carlsbad, an unpublished decision from Judge Keepe in the Southern District of California. And that case, she actually found that there could be a challenge under 332 facially to the ordinance. And Sprint and the same attorneys argued that and said, yes, there can be. But they don't want 332 facial challenges because Congress has been very specific in 332. They said prohibitions, which are outright bans, violate the Telecommunications Act and decisions should be made on a case-by-case basis. That's what the Court recognized in Metro PCS in its decision. It talked about individual denials, but it also said, of course, an outright ban would violate Section 332C7B2. Well, how do you do that? Kennedy. Well, your position is anything short of an outright ban is not in the language of Section 253 have the effect of prohibiting the ability of any entity to provide any interstate or intrastate communication, telecommunications services. It has to be an outright ban, and then you can only sue under 332. When does this language apply? This applies to barriers to entry, and that's all the cases that have looked at it, and it involves franchise type of regulations, which are essentially, if you want to participate in the market, then you need our blessing. But you might be all right if it said no State may prohibit by franchise or by license, period. But it says prohibit or have the effect of prohibiting. Doesn't that language allow a provider to say, this ordinance looks all very nice and well, but the effect of the ordinance is to prohibit? Well, I think the drafting could have been better, but the same language is used in Section 332, and it says the regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof shall not prohibit or have the effect of prohibiting the provision of personal wireless services. It's the same language. And we know what Congress meant when they enacted 332 as to that prohibition, because they said specifically in the conference report that it meant a general ban or policies that have the effect of banning. That's the law. That's what they intended to be the standard to be applied here when we're talking about wireless and decisions based upon individual wireless applications. And 332C7A says, except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of State or local governments or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities. Now, they want to argue that Congress intended to preserve your authority for decisions, but take it away when it comes to regulations. All in the same act, passed at the same time. That is just not credible. Congress knew that you don't pull these decisions out of thin air. The decisions are based upon zoning ordinance that set forth criteria. So their position is essentially, it's okay to deny the permit on a very subjective standard like aesthetics, which every circuit in the country has held as true, including this circuit and MetroPCS, but it's not all right if you say that under your ordinance, you enact an ordinance that allows you to deny it based upon aesthetics. That just doesn't work. 332 is the specific provision that governs here. It has the same prohibition language. It says this is the exclusive provision that covers here, C7A, but yet there's an attempt to go to 253A and have that be the standard. Why? It's a simple answer. 253, the courts have imposed heightened scrutiny because it's an up or down franchise situation. Either you're in or you're out. 332, the county's ordinance, it's not that case. Congress didn't want that kind of heightened scrutiny applied because the stakes aren't the same. The stakes are individual decisions on individual wireless applications. The stakes aren't you participate in the market or you don't participate in the market. If the county were to enact a franchise regulation and say, okay, if you want to participate, you need a license from us, that would be different. But Congress in 332 has laid out the framework for these. The language of the statute, the operative language is the same, and this circuit has interpreted it in MetroPCS, and every other circuit just about has interpreted it, and they've done it in a way that does exactly what the legislation says. It preserves local zoning authority. And there's lots of legislative history in the conference report about their effort to preserve the local zoning authority. Thank you, Your Honor. Mr. Passacucci, you have two minutes. Thank you, Your Honor. Could you address the point that was made by Mr. Buntin, I thought, quite well, that this is really a 332 case because there is exactly the same language in 332 about prohibit or have the effect of prohibiting as to ordinances. And this is, after all, WTO is an ordinance. Absolutely, Your Honor. The distinction is very clear and very simple. The exclusive saving clause that Mr. Buntin refers to under Section 332C7A specifically reserves 332's exclusivity over decisions regarding placement, modification, or construction of wireless facilities. 332 is the playing field for decisions under a lawful ordinance. Section 253, the plain language of the statute, it applies to statutes, regulations, and other legal requirements. The WTO is a legal requirement. It's also a county statute. That's where the basic dichotomy is simple. When you're challenging the ordinance, Section 253 is the right statute. Section 332, by contrast, begins with the assumption that the ordinance is valid. It never tests that. What the Court did in Metro PCS was never even consider the validity of the ordinance. It simply applied it from the presumption that it's valid and determined whether under Section 332 the jurisdiction there. But 253 is a facial challenge. 332 is the as-applied challenge. I think that's accurate, yes. I think that's accurate. I'd like to also address this distinction that Mr. Buntin has drawn regarding franchises versus zoning requirements. I believe that puts form over substance. Again, 253 speaks of statutes, regulations, or other legal requirements, not just The apparently Respondent would ask the Court to conclude that as long as a city or county refrains from an outright ban, whether via franchise or otherwise, it can apply reserve unfettered discretion and apply that discretion to say no to every single site that's applied for. But what happened, according to him, and I don't know if it's in the record, six out of ten applications have been granted. I'll address that, Your Honor. I apologize if I can put the cart before the horse a little bit. The challenges to the statute is written in what it may do, not necessarily how it's been applied. But under the county's theory, that possibility of an effective ban through serial denials would be very real. And going to Judge Bright's question, the carrier's only recourse would be to suffer these serial denials and sue each time in district court, file a challenge on each one. The county offers no explanation how requiring a federal case for every site while is consistent with the underlying purpose of the TCA to promote rapid deployment and reduce regulation. Kennedy. It's a plainly broken process if Mr. Bunton is right and six out of ten applications have been approved. Because he's wrong. That's not correct. What the county ignores is two things. First of all, the courts look to the statute, not the effect. But secondly, look to the effect here. He's ignoring plain evidence that we've put in that the county has used its unfettered discretion to create a virtual bottleneck of applications. Sprint put in evidence showing that some of its applications have been held up three years. So it's just not saying yes or no. It says, well, go do this. Go do that. Let's see an environmental impact report. Well, wouldn't your position be that they're denying by delay? I'm sorry. Go ahead. You're saying they're denying you by delay. Well, the effect is, yes, they are. And they're creating a process that has built in delay, all of which is inconsistent with the purpose of the statute, which is to promote rapid deployment. To be effective and to fulfill that goal, the TCA has to provide two things, one, relief from unlawful denials, and two, relief from unlawful processes. And Section 253 is the relief from the unlawful process. Are you saying that all local zoning ordinances which involve some discretion and delay are subject to 253? All zoning ordinances, regardless of what they involve, if they regulate telecommunications, are subject to 253. But I would not say that they violate it. Well, the point then is that the county may not have any power or very, very limited power to zone or enact zoning ordinances, and yet the Congress seems to have specifically reserved that for the counties. How do you figure that one out? I don't believe it necessarily follows. The fact that an ordinance is subject to 253A just means that a carrier who sees a violation has a right of action to bring that to court. I don't think that an ordinance just by virtue of reserving some discretion in some capacity necessarily violates 253. And keep in mind also, we have one ordinance in front of the court. There's one permanent injunction here that we're reviewing. The court only had the option of enjoining or not enjoining this ordinance. The question is, does this ordinance go too far as written? And if it does, can the violations be severed from the nonviolations? And we admit that ordinance mixes both. The district court found it goes too far, and under City of Auburn, clearly that's the right decision. And then the district court found that it could not be severed while giving meaning to the county's intent. So it disposes of the entire ordinance. Now, bear in mind also, and this is in effect, that the county has a prior ordinance that was in place. So the county is not left without an ordinance in light of this injunction. That's part of the problem that we think requires 253 damages, because they're never left powerless. They can always come back with another one and another one and another one. And we could be here 20 years from now on ordinance number 10 arguing this one violates 253 too. Right now, their perception is that their only risk of that pattern is the sunk cost of salaried attorneys and the mild sting of an injunction that can only stop one violation at a time. That's why we need the Civil Rights Act to ensure that the county bears the expense of prohibitory practices and a pattern of those practices. Thank you. Thank you very much. Very interesting argument. Congratulations, both counsels.
judges: Bright , Tashima, Bea